1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alana Yakovlev, No. 270910
WALK FREE LAW
611 S. Catalina Street, Suite 222
Los Angeles, CA 90005
Telephone:  (213) 674-7323
Facsimile:  (323) 998-6339

Attorneys for:  Plaintiff CHRISTINE TAYLOR

MARK L. NATIONS, COUNTY COUNSEL
By:  Andrew C. Thomson, Chief Deputy (SBN 149057)
Kern County Administrative Center
1115 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301
Telephone:  (661) 868-3800
Facsimile:  (661) 868-3805

Attorneys for:  Defendants COUNTY OF KERN,
                      KERN COUNTY SHERIFF DONNY YOUNGBLOOD

Michael G. Marderosian, No. 77296
Heather S. Cohen, No. 263093
MARDEROSIAN & COHEN
1260 Fulton Street
Fresno, CA 93721
Telephone:  (559) 441-7991
Facsimile:  (559) 441-8170

Virginia Gennaro, No. 138877
City Attorney
CITY OF BAKERSFIELD
1501 Truxtun Avenue
Bakersfield, CA 93301
Telephone:  (661) 326-3721
Facsimile:  (661) 852-2020

Attorneys for:  Defendants CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT,
                      OFFICER ERIC HARDIN, BAKERSFIELD POLICE DEPARTMENT SERGEANT
                      LOUIS WOOD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTINE TAYLOR, | ) | Case No. 1:17-CV-01669-LJO-JLT |
| | ) | |
| Plaintiff, | ) | **JOINT SCHEDULING REPORT** |
| vs. | ) | |
| | ) | **DATE:  March 14, 2018** |
| KERN COUNTY, a municipal entity; | ) | **TIME:  8:30 a.m.** |
| CITY OF BAKERSFIELD, a municipal entity; | ) | **JUDGE:  Hon. Jennifer L. Thurston** |
| Sheriff of Kern County DONNY | ) | |
| YOUNGBLOOD, individually and as a peace | ) | *Request for Telephonic Appearance by* |
| officer; Bakersfield Police Department Officer | ) | *Defendants CITY OF BAKERSIFELD, ERIC* |
| ERIC HARDIN, individually and as a peace | ) | *HARDIN and LOUIS WOOD* |
| officer; Bakersfield Police Department Sergeant | ) | |
| LOUIS WOOD, individually and as a peace | ) | |
| officer; and DOES 1-20, inclusive | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

COME NOW, the Parties in this matter and hereby submit their Joint Scheduling Report pursuant to the Court's Order Setting Mandatory Scheduling Conference [Dkt. No. 4].

Plaintiff Christine Taylor is represented by Alana Yakovlev of Walk Free Law.

Defendants Kern County and Donny Youngblood ("County Defendants") are represented by Andrew C. Thomson of the Office of County Counsel, County of Kern.

Defendants City of Bakersfield, Eric Hardin and Louis Wood ("City Defendants") are represented by Michael G. Marderosian and Heather S. Cohen of the law firm of Marderosian & Cohen.

**1.  SUMMARY OF FACTUAL AND LEGAL CONTENTIONS SET FORTH IN THE PLEADING OF EACH PARTY:**

   **A.    Plaintiff's Summary:**

   Plaintiff claims Defendant City of Bakersfield and Officers Eric Hardin are liable due to the fact that they failed to make an adequate determination of probable cause by failing to review evidence that

exonerated Plaintiff prior to making the arrest and issuing a false police report in connection thereto. Defendants County and Youngblood are liable for using threats, coercion and intimidation to silence Plaintiff's speech, by failing to follow adequate procedures and unlawfully placing Plaintiff in administrative segregation instead of following protocol in the event they thought Plaintiff was a grave danger to herself or others, and further inappropriately used administrative segregation to silence Plaintiff's speech when she implored Defendants to review the video exonerating her of the alleged crime and the video of the intake that would demonstrate Plaintiff was not a suicide risk.

**B.      County Defendants' Summary:**

As set forth in the Answer file on behalf of County Defendants (hereinafter "County"), County has no liability in this matter.  There was no violation of any of Plaintiff's federal statutory or Constitutional rights, state rights, or any other rights as alleged in the Complaint

Defendant Youngblood's interaction with Plaintiff is insufficient to establish liability on behalf of Youngblood or Monell liability against County.  All actions, and/or failures to act, of Youngblood and/or any other County (KCSO) employee were reasonable, appropriate and proper in all circumstances. Youngblood is also entitled to qualified immunity with a determination at the earliest possible opportunity.

**C.      City Defendants' Summary:**

Defendants deny any wrongdoing as alleged in Plaintiff's Complaint.  Defendants contend that the actions of the officers (in all aspects of this case) were reasonable, appropriate, and in conformance with Bakersfield Police Department Rules and Regulations, accepted police procedures, and the laws of the State of California and the United States of America.

Defendants also contend that none of Plaintiff's federal statutory or Constitutional rights, state rights, or any other rights were violated at any time during the incident which allegedly gave rise to this lawsuit.  The doctrine of qualified immunity as more further discussed in applicable federal statutory and case law applies to the conduct of the officers as do immunities conferred pursuant to the California Government Code and California Penal Code as set forth in the Defendants' Answer to Complaint.

2.    **PROPOSED AMENDMENTS:**

   **Plaintiff:**

   Plaintiff does not presently intend to file any proposed amendments.

   **County Defendants:**

   County does not presently intend to file any proposed amendments.

   **City Defendants:**

   At present, there are no proposed amendments planned by the City Defendants.

3.    **SUMMARY OF UNCONTESTED AND CONTESTED FACTS:**

   A.    **Uncontested Facts:**

      1.    Defendant admits that Plaintiffs' claims herein arise out of an incident that took place in the City of Bakersfield, State of California, and within this judicial district, and that jurisdiction and venue are proper in this Court.

      2.    The City of Bakersfield is a public entity and is responsible for and administers the Bakersfield Police Department.

      3.    The County of Kern is a public entity and is responsible for and administers the Kern County Sheriff's Department.

      4.    Donny Youngblood is the Sheriff of Kern County.

      5.    Eric Hardin is a police officer with the Bakersfield Police Department and was acting under color of law and within the course and scope of his duties as a police officer.

      6.    Louis Wood is a police officer with the Bakersfield Police Department and was acting under color of law and within the course and scope of his duties as a police officer.

      7.    The incident giving rise to this action occurred on May 15, 2017.

   B.    **Contested Facts:**

   All other facts remain in dispute.

4.    **SUMMARY OF LEGAL ISSUES:**

   A.    **Undisputed:**

   Jurisdiction and venue are undisputed.

**B.     Disputed:**

<u>Plaintiff's Allegations:</u>

1.      Whether on May 15, 2017, Plaintiff's elderly father, Gilbert Naranjo, attacked her while she was in her room at their home at 2804 Hollins St., Bakersfield, CA 93305, where Ms. Taylor lived with Mr. Naranjo and her mother.

2.      Whether Ms. Taylor had taken video footage that clearly shows Mr. Naranjo attacked her by ripping her bedroom door off of its hinges, almost hitting her in the head.

3.      Whether while Ms. Taylor ran across the room, Mr. Naranjo chased her, throwing around furniture, and repeatedly hitting her in a blind rage while she was on the floor.

4.      Whether while Plaintiff's head was on the floor, Mr. Naranjo grabbed a belt to whip her.

5.      Whether while Ms. Taylor attempted to grab the belt to prevent her father from whipping her, Mr. Naranjo accidentally hit himself in the head with the belt and began to bleed.

6.      Whether after Mr. Naranjo beat her, he called the police and falsely claimed that she attacked him.

7.      Whether this is the third time Ms. Taylor had been attacked by Mr. Naranjo and this time, Mr. Naranjo called the police falsely alleging that she was the perpetrator of the violence.

8.      Whether when Eric Hardin arrived on the scene investigate the incident, Mr. Naranjo recounted his version of the incident to the police.

9.      Whether Plaintiff continuously implored Eric Hardin to take a look at the video footage to demonstrate that she was the victim, not her aggressor.

10.     Whether Eric Hardin refused to take a look at it and began to mock her by saying she was "talking gibberish."

11.     Whether these facts and circumstances indicate reasonable trustworthy information was easily accessible to Eric Hardin and would have prevented Ms. Taylor's arrest.

12.     Whether a reasonable and prudent police officer would have been on notice that there was no probable cause to effectuate the arrest; yet Eric Hardin stubbornly refused to heed Ms. Taylor's

supplications or even to acknowledge her requests that he review the video prior to Ms. Taylor being taken into custody.

13.   Whether the facts surrounding the arrest indicate that Eric Hardin could not have possessed a reasonably mistaken belief that there was probable cause to arrest her because Eric Hardin had knowledge, *i.e.* the video, sufficient to warn a prudent police officer into believing that Ms. Taylor had not violated the law.

14.   Whether although Ms. Taylor continued to assert her innocence by repeatedly informing Eric Hardin to view the video she had taken, Eric Hardin instead arrested her without probable cause and placed her in the back of the police car.

15.   Whether while handcuffed and placed in the police car, Eric Hardin placed a call to Louis Wood to confirm that the arrest was proper and while Hardin and Wood were on the phone, Ms. Taylor continued to shout that she was innocent and that there was video footage clearly proving such.

16.   Whether to silence her from asserting her innocence, and to intimidate and coerce her into silence and submission, Louis Wood approved the arrest and Ms. Taylor was transported to the Kern County Sheriff's Department Central Receiving Facility for booking and detention.

17.   Whether on May 16, 2017, Defendant Hardin inaccurately wrote a police report whereupon there was no mention about the existence of a video-crucial exonerating evidence that would prevent Ms. Taylor's arrest and detention-or any supplications to Defendant Hardin that he examine the video to show that Ms. Taylor was a victim and not an aggressor.

18.   Whether Defendant Hardin in the police report falsely and inaccurately painted a picture of Ms. Taylor being "incoherent" when he described her as attempting "to hide from officers," which could not be further from the truth.

19.   Whether, in fact, Ms. Taylor's father had kicked her out of the house and Ms. Taylor had to leave and park down the block, in front of her cousin's house, to seek safety after  she had been attacked by her father.

20.   Whether Defendant Hardin did not properly or adequately assess Ms. Taylor's mental state, nor did they ask her questions about why she fled the scene of the incident; the police report implies that she was evading arrest.

21.     Whether Defendant Hardin wrote in his police report that Ms. Taylor had been given her Miranda warnings, when in fact, he had not read Ms. Taylor her Miranda rights.

22.     Whether in his report, Defendant Hardin stated that he relayed the details of the investigation to Defendant Wood.

23.     Whether Defendant Hardin's materially false report omitted what he knew were true and exculpatory facts pertaining to Ms. Taylor, which was presented to Defendant Wood for approval and ratification, who took them at face value as true and correct.

24.     Whether the police report was then used by the Kern County District Attorney's office to file charges against Ms. Taylor, resulting in the filing of Misdemeanor Complaint No. BKl7106681 in the Kern County Superior Court accusing Ms. Taylor of elder abuse and assault with a deadly weapon.

25.     Whether during the booking process at the Kern County Sheriff's Department Central Receiving Facility, Ms. Taylor continued to assert her innocence and pled with Does 1-10 to view the video unequivocally proving her innocence.

26.     Whether Plaintiff also implored Does 10-20 to take photos of the bruises on her face and body to show that she had been attacked.

27.     Whether Does 10-20 unequivocally refused to do so.

28.     Whether Plaintiff was unlawfully prevented from exercising her right to   free speech on at least four occasions during the arrest, intake, and booking process.

29.     Whether Ms. Taylor's consistent protests that she was innocent further incited Defendants Hardin, Youngblood, Wood and Does 1-20 to take action in retaliate in a manner intended to chill her speech and interfere with her civil rights through intimidation and coercion.

30.     Whether first, Ms. Taylor implored Defendant Hardin, and upon information and belief, Defendant Wood, to review the exonerating evidence on the video of the incident showing she was, in fact, a victim.

31.     Whether to curb her speech and interfere with her civil rights  through coercion and intimidation, Defendant Hardin retaliated against Ms. Taylor by mocking her and stating she was "talking gibberish."

32.     Whether Ms. Taylor's speech further incited Hardin to unlawfully arrest her without probable cause, thus interfering with her civil rights through intimidation and coercion.

33.     Whether Plaintiff was also prevented from exercising her right to free speech and was retaliated against for exercising her right to free speech when she asked for clarification about questions on the Inmate Classification Questionnaire.

34.     Whether Does 10-20, without any medical or psychiatric personnel present, reviewed an Inmate Classification Questionnaire ("Questionnaire") with Ms. Taylor.

35.     Whether pursuant to the Questionnaire, Does 10-20 inquired of Ms. Taylor whether she would be a risk to herself or others, or whether she would hurt herself "by any means possible."

36.     Whether in response, Ms. Taylor asked a clarifying question as to what that question meant.

37.     Whether Does 10-20 responded, "What do you think it means?"

38.     Whether Ms. Taylor asked Does 1-20 whether the question meant that she would kill herself with her clothes, to which she answered, "No."

39.     Whether without any further clarification, and without medical, legal, or factual justification, Does 10-20 determined that Ms. Taylor should be placed on suicide watch and held in an isolation cell.

40.     Whether Does 10-20 placed Ms. Taylor in the isolation cell, without any follow-up medical or psychiatric screening, assessment, or diagnosis, for seven (7) days.

41.     Whether throughout the seven (7) days, Ms. Taylor continued to assert to Does 10-20 that she was not a danger to herself or others and repeatedly inquired of Does 10-20 why she was being placed in isolation.

42.     Whether Does 10-20 continued to ignore her inquiries and requests.

43.     Whether on or about May 20, 2017, when Ms. Taylor told Does 10-20 that she was not suicidal, they responded, "We don't trust you."

44.     Whether this statement by Does 10-20 demonstrated another incident of chilling of free speech, intimidation, and coercion by law enforcement, specifically in that Does 10-20, without basis, continued to maintain that Ms. Taylor was a danger to herself or others, or gravely disabled, even though Ms. Taylor never saw a doctor or psychiatric professional and was never administered any medication.

45.     Whether on or about May 17, 2017, Ms. Taylor had a conversation with Defendant Youngbood while incarcerated in the isolation cell.

46.      Whether Ms. Taylor clearly and unequivocally informed Defendant Youngblood that she was not suicidal and that his deputies were not following proper procedure by placing her in an isolation cell.

47.      Whether Defendant Youngblood chilled her free speech by responding, "you are lying."

48.      Whether Ms. Taylor requested that Defendant Youngblood examine jail video depicting the intake interview that would indisputably show that she at no time expressed that she was suicidal and that she was in isolation against proper protocol.

49.      Whether Defendant Youngblood deliberately ignored her request to examine the evidence and abruptly terminated the conversation.

50.      Whether Defendant Youngblood's conduct, in spite of Ms. Taylor's  insistence that I shouldn't be here" indicates intimidation, coercion, and willful disregard of Ms. Taylor's constitutional right to free speech and continued unlawful confinement in administrative  segregation as a punishment for her declarations of innocence.

51.      Whether at no time during her wrongful detention in isolation was Ms. Taylor given a medical or psychiatric assessment or diagnosis in regards to placement via a Welfare and Institutions Code Section 5150 hold.

52.      Whether there were no qualified personnel present before, during, or after the decision to place Ms. Taylor in an isolation cell and whether Ms. Taylor was transferred to any medical facility for treatment, and whether Does 10-20 administered any medication for her alleged psychiatric condition.

53.      Whether during her seven (7) days in the isolation cell, Ms. Taylor requested access to legal counsel.

54.      Whether in a malicious and wrongful interference with Ms. Taylor's civil rights through intimidation and coercion, she was illegally denied access to an attorney and access to any form of communication to contact an attorney or anyone else.

55.      Whether the decision to place her into an isolation cell by Does 10- 20, and to deny her access to communication, including contact with counsel, was intentional, malicious, and in retaliation for Ms. Taylor exercise of her free speech by continuing to protest her innocence, interfering with her civil rights through intimidation and coercion.

56.     Whether by placing Ms. Taylor in isolation as an unlawful and unreasonable form of punishment, Does 10 - 20 ensured that Ms. Taylor was cut off from communication with  anyone who could potentially recognize her innocence and assist her in exonerating herself.

57.     Whether during her seven (7) days in the isolation cell, Ms. Taylor was denied access to hygiene facilities, including a shower, toothbrush, or other grooming and hygiene products or facilities.

58.     Whether during her seven (7) days in the isolation cell, Ms. Taylor requested access to pain medication for her scoliosis.

59.     Whether Ms. Taylor was provided such medication.

60.     Whether during her seven (7) days in the isolation cell, on or about the period between May 15, 2017 and May 21, 2017, Ms. Taylor was presented before a court for arraignment to be formally charged.

61.     Whether Ms. Taylor had a prior criminal record before this incident.

62.     Whether Defendant Does 10 -20 have a defensible basis for their "lock her up and throw away the key" beliefs and conduct towards Ms. Taylor under the United States Constitution and federal and state statutes.

63.     Whether the criminal charges against Ms. Taylor were dismissed in the furtherance of justice on or about June 5, 2017.

64.     Whether in a brutal deprivation of freedom and civil rights through intimidation and coercion and in an effort to silence her speech-Ms. Taylor was arrested without probable cause, incarcerated without probable cause, locked in an isolation cell in an effort to deny her all communications with counsel and anyone else in the outside world, deprived of access to counsel, hygiene and basic medical care, and denied access to due process and a court for seven (7) days without any reasonable basis or legal or factual justification.

65.     Whether prior to this incident, which has left her emotionally scarred, Ms. Taylor was an Information Technology Specialist and has had difficulties finding comparable sustainable employment since this incident.

66.     Whether Ms. Taylor filed an Internal Affairs complaint with the Bakersfield Police Department on or about June 20, 2017 detailing the wrongful conduct to her at the hands of Bakersfield Police Department Officers Hardin and Does 1-9.

67.     Whether although required by California Penal Code § 832.5 and Bakersfield Police Department policy, the results of the internal administrative investigation are known.

68.     Whether any Defendant and culpable Bakersfield Police Department employee has been reprimanded for their wrongful conduct, thereby shielding said defendants from accountability for their felonious wrongdoing, all in accordance with Bakersfield Police Department custom, policy, and practice.

69.     Whether Ms. Taylor submitted a Notice of Claim to the County of Kern on August 22, 2017.

70.     Whether Plaintiff has six (6) months from the date of the notice, September 12,2017, to file a court claim, since the action was rejected by the Board of Supervisors and whether Ms. Taylor has timely filed this lawsuit prior to the expiration of this period.

71.     Whether Ms. Taylor submitted a Notice of Claim to the City of Bakersfield on June 12, 2017 and whether the City of Bakersfield gave notice of its denial of Plaintiff s claim on June 26, 2017.

72.     Whether Plaintiff has timely filed this lawsuit prior to the expiration of this period in compliance with Government Code §945.6.

73.     Whether this is an action at law for money damages arises under Title 42 U.S.C. §1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

74.     Whether commencing at or about the aforementioned date and place, without cause or justification, and acting under color of law, Defendants Youngblood, Hardin, Wood and Does 1-20, and each of them, intentionally and maliciously deprived Plaintiff of rights secured to her against abridgement of free speech; unreasonable seizure; false arrest without probable cause by failing to examine exonerating evidence; due process by refusing to allow Plaintiff to communicate with or access legal counsel; and by withholding her from arraignment within the constitutionally-mandated time to present her before a court; and by refusing to provide Plaintiff with hygiene facilities or implements, means of communications, and medication while she was incarcerated.

75.     Whether Defendants, and each of them, carried out and perpetrated cruel and unusual practices to deprive Plaintiff of her rights against abridgement of freedom of   speech,

unreasonable seizures, deprivation of due process, refusal of access to legal counsel, and freedom from groundless criminal prosecutions by refusing to examine exonerating evidence before unreasonably and unjustifiably arresting and detaining Plaintiff without probable cause to silence her from insisting on her innocence; subsequently filing an inaccurate and false police report materially omitting the existence of exonerating evidence to justify the unlawful arrest and detention; placing Plaintiff in an isolated cell with no medical, legal, or factual justification for seven (7) days; refusing her access to counsel, medication, communications means, and hygiene facilities and products after she requested such; and preventing her from being presented before a court for arraignment within the statutorily mandated time for arraignment.

76.    Whether Defendants, and each of them, personally and intentionally effectuated these civil rights violations maliciously and willfully, to deprive Plaintiff of her constitutional and statutory rights under federal and state law.

77.    Whether in violation of Title 15 of the California Code of Regulations, §1053 et. seq., on or about May 15, 2017 through May 21, 2017, Plaintiff was incarcerated at the KCSD's Central Receiving Facility and placed into administrative segregation as a form of punishment.

78.    Whether during the booking and intake process whereupon Plaintiff reviewed an Inmate Classification Questionnaire with Does 10-20, Plaintiff was asked whether she would commit suicide "by any means possible" or whether she was a danger to herself or others.

78.    Whether when Plaintiff asked Does 10-20 to clarify those questions because she did not understand what was being asked, Does 10-20 immediately and without any basis-with no psychiatric or medical personnel present during the assessment-determined that she was a danger to herself or others or was gravely disabled.

79.    Whether Does 10-20 without any objective or subjective facts in support of their determination detained Plaintiff in an isolated cell for seven (7) days against her will and without any medical, legal, or factual grounds.

80.    Whether at any point during the detention Ms. Taylor was given an evaluation by competent medical personnel.

81.    Whether at any time during her detention in isolation Ms. Taylor was permitted to shower or brush her teeth.

82.    Whether Plaintiff's requests for legal counsel were ignored.

83.     Whether Plaintiff's insistence that she had evidence that she was innocent were ignored.

84.     Whether in blatant contravention of 15 CCR §1053, Plaintiff was placed in an isolated cell without the approval of the watch commander, facility manager, or a designated physician, without continuing surveillance and monitoring twice every thirty (30) minutes, as required by California law.

85.     Whether Plaintiff was given a medical assessment within twelve (12) hours of placement in the isolation cell and whether her mental health was assessed every eight (8) hours by mental health personnel.

86.     Whether Defendant Kern County, in its operation of the Kern County Sheriffs Department Central Receiving Facility, failed to medically clear Plaintiff every twenty-four (24) hours after she was placed in an isolated cell.

87.     Whether there is documentation from medical or mental health personnel demonstrating that Plaintiff was a danger to herself or others, or gravely disabled.

88.     Whether as a proximate result of the aforesaid acts and omissions of Defendants, and each of them, Plaintiff sustained great mental pain, loss of wages, shock, fear, anxiety, torment, degradation and emotional distress.

89.     Whether by reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff incurred therapeutic expenses in an amount that will be proven at trial.

90.     Whether in addition, by reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff was kept from attending to her usual occupations, and have suffered loss and impairment of earnings and employment opportunities all to her damage in an amount to be proved at trial.

91.     Whether by reason of the aforementioned acts of Defendants, and each of them, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs hereinbefore mentioned and by virtue thereof, Plaintiff is indebted and liable for attorneys' fees.

92.     Whether the aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully and maliciously, with the intent to harm, injure, vex, harass and oppress Plaintiff with a conscious disregard of Plaintiff's Constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, and each of them, in an amount to be proved at trial.

93.     Whether Defendant Kern County is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant Kern County possessed the power and authority to adopt policies and prescribe rules, regulations,  and practices affecting the operation of the Kern County Sheriff's Department and its tactics,  methods, practices, customs, and usages related to inmate welfare, personnel supervision and  records maintenance, and proper booking, classification, care, and maintenance of inmates in its  custody by its rank and file, generally.

94.     Whether at all times herein, Defendant Youngblood and Does 10-20 employee acting under Defendant Kern County's discretion and control, who knowingly and intentionally promulgated, maintained, applied, enforced, and suffered the continuation of policies, customs, and usages in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices, and usages at all times herein mentioned deployed, retained, and assigned persons as peace officers who have repeatedly demonstrated their propensities for false imprisonment, malicious misclassification of inmates without medical, legal, or factual justification; continued   misclassification by not examining video evidence of such misclassification; deprivation of  counsel and withholding from arraignment; and refusal to provide access to hygiene facilities  and implements, communication means, and medication, and numerous other abuses of their  duties as peace officers in the employment of Defendant Kern County.

95.     Whether Defendant Kern County, through Defendant Youngblood and Does 10-20, its administrators and decision-makers, with negligence, deliberate indifference, knowingly, recklessly, and/or with reckless disregard for the health and safety of inmates in the jail system, including Plaintiff, promulgated, created, maintained, ratified, condoned, and enforced a series of policies, procedures, customs, and practices which authorized the arbitrary punishment and legally and factually unjustified classification into an isolation cell and continuing the misclassification by not examining video evidence of such misclassification, while depriving inmate Plaintiff of hygiene products and facilities, telephone and other forms of communication, medication, and legal counsel. In accordance with the above-cited series of policies, procedures, customs, and practices, the foregoing actions alleged above were taken regarding the maltreatment and wrongful arrest of Plaintiff.

96.     Whether Defendant Kern County knowingly maintains and permits official sub-rosa customs or policies of permitting these types of wrongs set forth above, by deliberate  indifference to widespread policy abuses, including but not limited to, misclassifying inmates in isolation without

legal, factual, or medical justification; continued misclassification by not examining video evidence of such misclassification; depriving inmates of hygiene facilities and products and medication; and violating Penal Code § 825 by refusing to allow inmates to confer with legal counsel, depriving them of means of communications in which to contact counsel, and withholding inmates from arraignment.

97.     Whether Defendant Kern County failed and refused to fairly and impartially discipline or prosecute peace officers who committed these acts of criminal dishonesty, each ratified and approved by Defendant Kern County, Youngblood and Does 10-20 prior to and since May 15,2017, as was revealed by the fact that Plaintiff personally notified Youngblood on or about May 17, 2017, when she met Youngblood in her isolated jail cell and unequivocally notified him that she was not suicidal, that she had been misclassified in the isolation cell by his sheriff's deputies and implored Defendant Youngblood to examine video evidence of the booking procedure unequivocally demonstrating such, that she had been deprived of hygiene facilities and implements, medication, and access to counsel, to which Defendant Youngblood responded that she was "lying" and walked away, leaving her isolated in the cell for four (4) more days and thereby approving Does 10-20 wrongful conduct.

98.     Whether Defendant Kern County's refusal to enforce its own rules, regulations, policies, and procedures, particularly with respect to inmate misclassification and continued misclassification, provision of hygiene facilities and implements, ability to communicate and access counsel, and deprivation of due process by refusing to present Plaintiff before a court for arraignment, together with Kern County's systemic refusal to discipline any officers engaged in unlawful conduct.

99.     Whether the unconstitutional policies, practices, or customs promulgated, sanctioned, or tolerated by Defendants Kern County, Youngblood and Does 10-20 include, but are not limited to:

a.     Knowledge of, prior to and since this incident, allegations of continuous misclassification and deprivation of provision of hygiene facilities and implements, ability to communicate and access counsel, and deprivation of due process by refusing to present Plaintiff before a court for arraignment. Specifically, by engaging in conversation with Plaintiff on or about May 17, 2017, Defendant Youngblood became notified of his deputies' wrongful practices when Plaintiff unequivocally notified him of such, in a clear and detailed manner; to wit, that she had been misclassified in the isolation cell by his sheriff's deputies and to examine video evidence of the intake procedure showing such, that she had been deprived of hygiene facilities and implements, medication;

access to, and communication with, legal counsel; and  improper holding from arraignment, to which Defendant Youngblood responded that she was being untruthful with her and walked away, leaving her isolated in the cell for four (4) more days and thereby approving his deputies' wrongful conduct.

b.    Defendants Kern County, Youngblood, and Does 10-20 had knowledge of deputy misconduct and refused to enforce established administrative procedures to ensure the safety of detainees and arrestees as reported by Plaintiff;

c.    Defendants Kern County, Youngblood and Does 1-20 refused to adequately discipline individual officers and employees found to have committed acts of abuse and misconduct as reported by Plaintiff ;

d.    Defendants Kern County, Youngblood and Does 1-20 refused to competently and impartially investigate allegations of abuse and  misconduct alleged to have been committed by Kern County Sheriff's deputies and employees as reported by Plaintiff;

e.    Defendants Kern County, Youngblood and Does 1-20 knew of and sanctioned the custom and practice of misclassifying inmates in isolation cells without legal, factual, or medical justification; continued misclassification by not examining video evidence of such misclassification; refusing inmates hygiene facilities and implements and medication; denying  inmates access to, and communication with, legal counsel; and withholding from arraignment in violation of Penal Code § 825. Defendants Kern County, Youngblood and Does 1-20 knew of and failed to adequately train and educate officers in the principles of reasonable cause to take a person's freedom, the use and reasonable and proper classification procedures, such as proper use of, and placement in, isolation cells, the administration of medication and hygiene facilities and implements; access to, and communication with, legal counsel; and presentment of an inmate to a court for arraignment within statutorily-mandated time limits.  Defendants Kern County, Youngblood and Does 1-20 failed to enforce the Kern County Sheriff's Department's written regulations with respect to the  aforementioned rights as disclosed to Defendant Youngblood by Plaintiff.

f.    Defendants Kern County, Youngblood and Does 1-20 failed to adequately supervise the actions of deputies under the Kern County Sheriff Department's control as revealed by Plaintiff.

g.    Defendants Kern County, Youngblood and Does 1-20 condoned and actively participated in the customs and practices of misclassifying inmates in isolation cells without legal, factual, or medical justification; refusing inmates hygiene facilities and implements and

medication; denying inmates access to, and communication with, legal counsel; and withholding from arraignment in violation of Penal Code § 825.

h.    Defendants Kern County, Youngblood and Does 1-20 fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which before, on, or after May 15,2017, represented the unconstitutional policies and customs of Kern County and Youngblood.

100.    Whether by reason of the aforesaid policies, customs, practices, and usages, Plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments were violated, invaded, and deprived.

101.    Whether after arrest without probable cause and placement in the police car, Defendant Eric Hardin placed a telephone call to Defendant Wood for approval of Plaintiff's arrest and during this telephonic conversation, Plaintiff began to exclaim that she possessed exonerating evidence and implored the officers to examine the video that showed that she was the victim, and not the perpetrator, of abuse.

102.    Whether Defendant Wood was able to hear her supplications because she was screaming loud enough, and Defendant Hardin was close enough, so that her words could be heard by Defendant Wood and Does 1-9 and Wood nonetheless approved the arrest and Plaintiff who was transported to the Kern County Sheriff Department's Central Receiving Facility for detention.

103.    Whether Defendant Hardin falsely and inaccurately failed to annotate

on the police report that Ms. Taylor repeatedly implored Defendant Hardin to examine such exonerating evidence that would have prevented her incarceration, that such evidence existed, that falsely and inaccurately painted a picture of her as mentally unstable, and that Ms. Taylor was informed of her Miranda rights.

104.    Whether in Defendant Hardin's May 16, 2017 police report, he stated that he notified Defendant Wood about the investigation.

105.    Whether on or before May 15, 2017, there existed within the BPD: (1) an administrative manual; (2) a written compilation of policies and procedures; (3) orally-conveyed departmental policies; and (4) statutory law regarding interactions with and arrests of individuals thought to be mentally ill.

106.    Whether the actual policies cited herein and the training of law enforcement personnel to enforce these policies, each being a policy implementing punishments imposed by

Defendant Wood and Does 1-9 without an order or requirement to impose such punishments under state law and which remain under the supervisorial umbrella of Defendant Wood and DOES 1-9, which represent law enforcement functions of Defendant Wood and Does 1-9 as law enforcement officers and supervisors and have been deemed and treated by such by Defendant Wood and Does 1-9 through their mutual agreement, consent, assent, custom, and practice as alleged above because:

      a.     They represent implementation of Bakersfield Police Department administrative and procedural policy;

      b.     They are a series of rules imposing punishments unrelated to the actual punishments imposed by State law or to actions required to enforce the punishments required by State law;

      c.     They are all applied to enforcement field investigative and detention functions, over which Defendant Wood and Does 1-9 have the powers to monitor, audit, and intervene, and which therefore are, by definition, Bakersfield Police Department actions.

107.    Whether at all relevant times, Defendant Wood and Does 1-9 each knew or should have known of acts of the nature complained of herein occurring in the field as a means, method, practice, policy, or custom of punishing inmates or of otherwise seeking to impose discipline, conducted by their employees or as a means of exercising indiscriminate abuse of arrestees. Said defendants knew, or in the exercise of reasonable care, should have known the practice by their employees including Defendant Wood and Does 1-9 of the arbitrary punishment of inmates when those actions were facilitated by and done with the cooperation of Defendant Wood and Does 1-9 and others.

108.    Whether Defendant Wood and Does 1-9consciously disregarded this knowledge, failed to adequately investigate or discover or discipline and correct such actions or practices, thereby causing the violation of Plaintiff's constitutional rights as described herein.

109.    Whether Defendant Wood and Does 1-9 knew or should have known that an improperly trained officer who failed to investigate mitigating evidence create a risk to public safety; namely, the wrongful incarceration and continuous mocking of a resident of the City of Bakersfield and also a victim of domestic violence.

110.    Whether Defendant Louis Wood and Does 1-9 knew or should have known that Hardin, and other Bakersfield Police Department officers had a propensity, character trait, and practice, while purporting to act under color of law, for dishonesty, prevarication, and mishandling of investigations and exonerating evidence.

111.    Whether at all times mentioned herein, Defendant Wood and Does 1-9, knew or in the exercise of due care, should have known, that the afore described traits of character, practices, and propensities of Hardin made him unfit to serve as a peace officer and was likely to cause harm and injury to members of the public, including Plaintiff.

112.    Whether Defendant Wood and Does 1-9 negligently, carelessly, and recklessly hired, employed, retained, and failed to properly supervise, train, and control Defendant Hardin as a peace officer and assigned him to duties which enabled him to violate the law and BPD written policies, with complete impunity, including but not limited to, making illegal arrests without probable cause, refusing to examine exonerating evidence, filing a false police report, and mocking arrestees, all while purporting to act under the color of law.

113.    Whether prior to the incidents alleged herein which resulted in Plaintiff's injuries and damages, BPD officers, including Defendant Wood and Does 1-9, in the course and scope of their employment with Defendant City of Bakersfield facilitated, permitted, ratified, and condoned similar acts of mistreatment and were deliberately indifferent to the safety of arrestees like Plaintiff.

114.    Whether Defendant Wood and Does 1-9 knew or in the exercise of reasonable care should have known of this practice, pattern, or policy of institutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and said Defendants had a duty to instruct, train, supervise, and discipline their subordinates to prevent similar acts to other persons, but with deliberate indifference to the rights of Plaintiff and other arrestees, failed to take action to properly train, instruct, supervise, or discipline Bakersfield Police Department officers, or other employees, including Does 1-9 and, as a result, Plaintiff was abused and injured, for no justifiable reason, as alleged.

115.    Whether at all times mentioned herein and prior thereto, Defendant Wood and Does 1-9 had the duty to train, instruct, supervise, and discipline Bakersfield Police Department officers, including Defendant Hardin, to ensure they respected and did not violate  state and federal constitutional and statutory rights of detainees and to objectively investigate violations of said arrestees' rights. Among these rights being:

a.    The right to be free from unjustifiable and unwarranted arrest and detention without probable cause;

b.    The right to ensure that a proper investigation is conducted into exculpatory evidence so that a victim of a crime is not detained;

c.      The right to be free from sadistic mockery in the process of arrest.

116.    Whether Defendants Wood and Does 1-9 breached said duties by failing to train, instruct, supervise, or discipline their officers on the violation of Plaintiff's and other arrestees' constitutional rights, as alleged herein.

117.    Whether the conduct of said Defendants has been ratified, authorized, or otherwise condoned by each of them in their official and individual capacities.

118.    Whether subsequently, Plaintiff was housed as an inmate at the Kern County Sheriff's Department Central Receiving Facility, whose personnel are supervised by Defendant Youngblood.

119.    Whether during the booking process, Does 10-20, who were supervised by Youngblood and working within the scope of their employment, reviewed an inmate classification questionnaire with Ms. Taylor.

120.    Whether there were psychiatric personnel or medical personnel present during this assessment.

121.    Whether when Ms. Taylor asked Does 10-20 to clarify a question about whether she was a danger to herself or others, the custodial officers immediately-with no psychiatric or medical personnel present during the assessment-determined that she was a danger to herself or others or was gravely disabled.

122.    Whether Does 10-20-without any objective or subjective facts in support of their determination-detained her in an isolated cell for seven (7) days against her will and without legal or factual grounds.

123.    Whether at any point during the detention Ms. Taylor was given an evaluation by competent medical personnel.

124.    Whether at any time during her detention in isolation Ms. Taylor was permitted to shower or brush her teeth.

125.    Whether Ms. Taylor's requests for access to legal counsel and medication were ignored.

126.    Whether Ms. Taylor was presented before a court for arraignment within the statutorily-mandated time frame.

127.    Whether on or about May 17,2017, Ms. Taylor informed Defendant Youngblood about his deputies violating intake procedures and departmental policies.

128.    Whether Youngblood's only response was, "I think you're lying," without investigating his deputies' inappropriate conduct towards Ms. Taylor.

129.    Whether Youngblood failed to ensure that his deputies were implementing and complying with policies and procedures designed to ensure that a detainee in the Kern County jail was not illegally and unjustifiably placed in an isolation cell without a proper medical determination.

130.    Whether on or before May 15, 2017, there existed within the KCSD: (1) an administrative manual; (2) a written compilation of policies and procedures; (3) orally-conveyed departmental policies; and (4) statutory law regarding the issues of appropriate classification of inmates; specifically, that inmates must be medically and I or psychiatrically assessed and determined by medical or psychiatric staff to be a danger to themselves or others, or gravely disabled.

131.    Whether the actual policies cited herein and the training of jail personnel to enforce these policies, each being a policy implementing punishments imposed by Kern County and Youngblood without an order or requirement to impose such punishments under state law and which remain under the supervisorial umbrella of Kern County and which represent purely KCSD functions of Youngblood as a Kern County officer and have been deemed and treated by such by the County through their mutual agreement, consent, assent, custom, and practice as alleged above because:

        a.    They represent implementation of Kern County administrative and procedural policy;

        b.    They are a series of rules imposing punishments unrelated to the actual punishments imposed by State law or to actions required to enforce the  punishments required by State law;

        c.    They are all applied to custodial jail functions, over which Youngblood and does 10-20 have the powers to monitor, audit, and intervene, and which therefore are, by definition, County actions.

132.    Whether at all relevant times, Youngblood and Does 10-20 each knew or should have known of acts of the nature complained of herein occurring at the County Jail as a means, method, practice, policy, or custom of penalizing inmates or of otherwise seeking to impose discipline, conducted by their employees or as a means of exercising indiscriminate abuse of persons in custody.

133.    Whether said defendants knew, or in the exercise of reasonable care, should have known the practice by their employees including Youngblood and Does 10-20 of the arbitrary

administrative segregation of inmates when those actions were facilitated by and done with the cooperation of Youngblood and Does 10-20 and others.

134.    Whether Youngblood and Does 10-20 consciously disregarded this knowledge, failed to adequately investigate or discover or discipline and correct such actions or practices, thereby causing the violation of Plaintiff's constitutional rights as described herein.

135.    Whether prior to the incidents alleged herein which resulted in Plaintiff's injuries and damages, Kern County deputies and jailers, including Youngblood and Does 10-20, in the course and scope of their employment with Kern County facilitated, permitted, ratified, and condoned similar acts of mistreatment and were deliberately indifferent to the safety of inmates like Plaintiff.

136.    Whether Defendants Youngblood and Does 10-20 knew or in the exercise of reasonable care should have known of this practice, pattern, or policy of institutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and said Defendants had a duty to instruct, train, supervise, and discipline their subordinates to prevent similar acts to other persons, but with deliberate indifference to the rights of Plaintiff and other inmates, failed to take action to properly train, instruct, supervise, or discipline Sheriffs deputies, jailers, or other employees, including Does 10-20 and, as a result, Plaintiff was abused and injured, for no justifiable reason, as alleged.

137.    Whether at all times mentioned herein and prior thereto, Defendants Youngblood and Does 10-20 had the duty to train, instruct, supervise, and discipline Kern County Sheriff deputies, including Does 10-20, to ensure they respected and did not violate state and federal constitutional and statutory rights of inmates and to objectively investigate violations of said inmates' rights. Among these rights being:

a.    The right to be free from the infliction of punishment by misclassification and wrongful and intentional placement into isolation;

b.    The right to hygiene facilities and medication;

c.    The right to telephone and other forms of communication;

d.    The right to access legal counsel; and

e.    The right to be assessed by a medical professional before being placed into isolation.

138.    Whether Youngblood and Does 10-20 breached said duties by failing to train, instruct, supervise, or discipline their deputy sheriffs on the violation of Plaintiff and other inmates' constitutional rights, as alleged herein.

139.    Whether the conduct of said Defendants has been ratified, authorized, or otherwise condoned by each of them in their official and individual capacities.

140.    Whether Defendants and each of them, owed to Plaintiff non-consensual duties set forth in California Penal Code §§ 118.1 (false police report by a peace officer), 825 (right to timely arraignment and right to confer with legal counsel), and Title 15 §1053 et seq. (improper use of safety cell and administrative segregation as punishment).

141.    Whether Defendants, and each of them, failed to abide by said non-consensual duties in that Defendants, and each of them, violated the aforesaid Penal Code sections.

142.    Whether as a direct and proximate result of tile foregoing, Plaintiff has been damaged as recited above and demands and is entitled to the damages recited in the First Cause of Action, including, but not limited general and punitive damages.

143.    Whether on or about May 15, 2017, in Bakersfield, California, Plaintiff was caused to be unlawfully seized and arrested by Defendants City of Bakersfield, Hardin, Wood and Does 1-9, and each of them, maliciously and without warrant or order of commitment or any other legal authority, or probable cause, as Defendants had access to exonerating evidence, which Plaintiff implored them to view, but which they refused to examine, and which would have clearly and unequivocally shown that Plaintiff was the victim, and not the perpetrator, of domestic abuse and that she had not committed any crime or public offense.

144.    Whether subsequently, after Plaintiff was arrested and transported to  the Kern County Sheriff's Department Central Receiving Facility for continued detention on or about May 15,2017 through May 21,2017, she was wrongfully and illegally placed in an isolation cell without any medical, factual, or legal justification to show that she was a danger to herself or others, or gravely disabled.

145.    Whether after notifying Youngblood of such, he ignored her supplications to view video of her booking and intake, which clearly and unequivocally showed that she was wrongfully, illegally, and unjustifiably placed in an isolation cell.

146.    Whether as a proximate result of the acts of the Defendants, and all of them, Plaintiff has suffered damages, loss, and harm.

147.    Whether as a direct and proximate result of the foregoing, Plaintiff has been damaged as recited above and demands and is entitled to the damages recited in the First Cause of Action, including, but not limited to, general and punitive damages.

148.    Whether during all times leading up to her arrest and detention, Defendants City of Bakersfield, Wood, Hardin  and Does did negligently and without due care, fail in their duties to protect Plaintiff by refusing to examine exonerating evidence that would have unequivocally established that she was the victim, and not the aggressor, in the incident for which she was wrongfully arrested and detained, despite her repeated requests for the Bakersfield Police Department officers, including Hardin, to do so.

149.    Whether Plaintiff's injuries as alleged occurred as a result of the absence of due care for her constitutional rights and constituted an unreasonable failure of constitutional, statutory, and common law rights, as City law enforcement officers were under duties to protect Plaintiff from the severe risk of wrongful arrest and detention without probable cause and the failure to properly and adequately investigate the alleged crimes for which she was arrested and detained, which manifested a grossly unreasonable risk of injury to Plaintiff.

150.    Whether said Defendants unreasonably and unjustifiably allowed and encouraged such actions and such negligent response to her constitutional rights without cause.

151.    Whether the aforesaid conduct of Defendants City of Bakersfield, Wood, Hardin and Does 1-9 was done in a reckless, unlawful, and/or negligent manner, as all defendants, and each of them, knew or should have known that Plaintiff was exposed to such conduct, omissions, and failures to act.

152.    Whether Defendant City of Bakersfield is liable under the principles of respondeat superior for the aforementioned acts of Wood, Hardin and Does 1-9 pursuant to California Government Code § 815.2.

153.    Whether Plaintiff timely complied with the filing of the Government  claim as to the entity Defendant and after the passage of forty-five (45) days, the City failed  and refused to act upon it, permitting Plaintiff to bring her State causes of action herein.

154.    Whether during all times leading up to her incarceration at the Kern County Sheriff's Central Detention Facility that Kern County, Youngblood and Does 10-20 did negligently and without due care, failed in their duties to protect Plaintiff by placing her in an isolated cell without

psychiatric or medical personnel assessing that she was a danger to herself or other, or gravely disabled, at any time during her incarceration.

155.    Whether Defendants Kern County, Youngblood and Does 10-20 did negligently and without due care failed to provide Plaintiff an evaluation by competent medical personnel at any time during her incarceration, access to hygiene facilities, telephone and other forms of communication, or access to legal counsel.

156.    Whether Plaintiff's injuries as alleged occurred as a result of the absence of due care for her constitutional rights and constituted an unreasonable failure of constitutional, statutory, and common law rights, as the County Defendants, Defendants County, Youngblood, and Does 10 - 20 in their operation of the Jail System imposed duties to protect Plaintiff from the severe risk of wrongful classification in an isolation cell, without access to hygiene facilities or legal counsel, and for failing to acknowledge her repeated pleas for such, which manifested a grossly unreasonable risk of injury to Plaintiff.

157.    Whether Defendants unreasonably and unjustifiably allowed and encouraged such actions and such negligent response to her constitutional rights without cause.

158.    Whether the aforesaid conduct of the County Defendants was done in a reckless, unlawful, and/or negligent manner, as all defendants, and each of them, knew or should have known that Plaintiff was exposed to such conduct, omissions, and failures to act.

159.    Whether Defendant Kern County is liable under the principles of respondeat superior for the aforementioned acts of Youngblood and Does 10 -20 pursuant to California Government Code § 815.2.

160.    Whether Plaintiff timely complied with the filing of the Government claim as to the entity Defendant and after the passage of forty-five (45) days, the County failed and refused to act upon it, permitting Plaintiff to bring her State causes of action herein.

161.    Whether Plaintiff is entitled to punitive damages as a result of the conduct of Hardin and Does 1-9.

162.    Whether Defendant City of Bakersfield is liable under the principles of respondeat superior for the aforementioned acts of Defendant Police Officers pursuant to California Government Code § 815.2.

163.    Whether Hardin and Does 1-9 intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability ,that Plaintiff would suffer emotional distress, knowing of Plaintiff's awareness when the conduct occurred.

164.    Whether the conduct of Defendants Hardin and Does 1-9 was a substantial factor in causing Plaintiff to suffer and continue to suffer from severe emotional distress, mental pain, anguish, embarrassment, humiliation, and psychological disturbance.

165.    Whether Plaintiff has suffered special and general damages as a result of the emotional distress, suffering, mental pain, anguish, embarrassment, humiliation, horror, nervousness, grief, anxiety, worry, shock, shame, and psychological disturbance in an amount according to proof at a trial in excess of this Court's jurisdiction.

166.    Whether the aforementioned acts of said individual defendants were willful, wanton, malicious, oppressive.

167.    Whether as a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, mental and emotional distress and is entitled to and demand  damages against Defendants City of Bakersfield, Hardin, Wood and Does 1-9 jointly and severally, as recited in the First Cause of Action, including, but not limited to, general and punitive damages.

168.    Whether the intentional conduct of Youngblood and Does 10-20 in maliciously placing Plaintiff in an isolated cell for seven (7) days, without access to hygiene facilities and implements, medication, or access to, and communication with, legal counsel, despite repeated requests for such, and despite the fact that no medical or psychological assessment was done at any time during her incarceration to determine whether she was a threat to herself or others, or gravely disabled, for no justifiable reason or cause, which was condoned, ratified, and permitted by Defendants County of Kern and Does 10-20, was outrageous and exceeded the bounds of conduct usually tolerated in this society.

169.    Whether Defendant Kern County is liable under the principles of respondeat superior for the aforementioned acts of Defendant Sheriffs pursuant to California Government Code § 815.2.

170.    Whether Defendant Youngblood and Does 10-20, in engaging in the aforementioned conduct, intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing of Plaintiff's awareness when the conduct occurred.

171.     Whether the conduct of Defendant Youngblood and Does 10-20 was a a substantial factor in causing Plaintiff to suffer and continue to suffer from severe emotional distress, mental pain, anguish, embarrassment, humiliation, and psychological disturbance.

172.     Whether Plaintiff has suffered special and general damages as a result of the emotional distress, suffering, mental pain, anguish, embarrassment, humiliation, horror, nervousness, grief, anxiety, worry, shock, shame, and psychological disturbance in an amount according to proof at a trial in excess of this Court's jurisdiction.

173.     Whether as a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, mental and emotional distress and is entitled to and demand damages against Defendants jointly and severally, as recited in the First Cause of Action,  including, but not limited to, general and punitive damages.

174.     Whether beginning on or about May 15,2017 and thereafter, Defendants knowingly interfered with Plaintiff's constitutional rights

175.     Whether in retaliation for Plaintiff's insistence on her  innocence, Defendants purposefully intended to intimidate, coerce, and interfere with her exercise of free speech. To wit, Defendant Hardin told Plaintiff that she was talking "gibberish" in response to her protest that she had video evidence exonerating her.

176.     Whether during the intake and booking process, Plaintiff continued to maintain her innocence and told Does 10 -20 of evidence regarding her innocence. To intimidate her into silence at KCSD's Central Receiving Facility, Defendant Does 10 -20 unlawfully locked her up in an isolation cell and did so knowingly without qualified medical personnel to determine whether she was a grave danger to herself and others, or gravely disabled, and thereby qualified for a Welfare and Institutions Code §5150 hold.

177.     Whether County Defendants continued to hold Plaintiff in an isolation cell for seven (7) days without a proper psychiatric or medical assessment at any time, deliberately ignored her insistence on innocence knowing that she should be released and with intimidation to silence, and responded to her assertions of innocence and supplications to examine exonerating evidence by claiming that she was lying, in an effort to silence her.

178.     Whether County Defendants refused Plaintiff access to hygiene implements and facilities for seven (7) days while she was wrongfully held in isolation.

179.    Whether County Defendants refused Plaintiff access to legal counsel, and any forms of communication to contact counselor anyone else, for seven (7) days while she was wrongfully held in isolation as an act of coercion and intimidation for protesting her innocence.

180.    Whether County Defendants deliberately ignored easily-accessible jail video to unequivocally determine that Plaintiff was in fact not a danger to herself or others or gravely disabled.

181.    Whether the conduct of all Defendants interfered or attempted to interfere with Plaintiff's civil rights through threats, intimidation, or coercion with Plaintiff's rights under state and federal laws and under the state and federal Constitutions, including, without limitation, the freedom of speech, freedom from unlawful search and seizure, the right to due process and access to counsel, and her rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under Articles 1 Sections 2, 13, 15,24,29 of the California Constitution and whether this was and is a violation of California Civil Code Section 52.1.

182.    Whether Defendants' conduct caused Plaintiff extreme pain and suffering and extreme emotional distress as alleged.

183.    Whether Plaintiff's claims against the Defendants are based on maintaining and permitting the practices, policies, and customs described in the Complaint.

184.    Whether, Youngblood, as the official policy maker for Kern County, was aware of the unlawful detention of Plaintiff in an isolated cell, and acted as such with intimidation to silence Plaintiff and prevent her from maintaining her innocence.

185.    Whether instead of taking steps to discipline these deputies, Youngblood condoned, encouraged, fostered and/or ratified the unlawful conduct of Does 10-20.

186.     Whether Plaintiff the County Defendants have ratified the individual deputies' unconstitutional conduct towards Plaintiff.

187.    Whether as a result of their conduct, Defendants are liable for Plaintiff's injuries either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

188.    Whether the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

189.     Whether Plaintiff is entitled to general and compensatory damages, past present, and future, and for emotional and psychological pain and suffering, distress, and injury in an amount in excess of $25,000.

190.     Whether Plaintiff is entitled to past and future medical and/or psychiatric services and expenses as proven at trial.

191.     Whether Plaintiff is entitled to lost earnings and earning capacity as proven at trial.

192.     Whether Plaintiff is entitled to recover costs of litigation.

193.     Whether Plaintiff is entitled to exemplary damages as against the individual Defendants.

194.     Whether Plaintiff is entitled to reasonable attorney's fees in the civil rights causes of action as provided by statute.

County Defendants' Defenses:

1.     Whether Plaintiff's Complaint, and each and every cause of action therein, fails to state a claim and/or cause of action against the County Defendants upon which relief can be granted.

2.     Whether Plaintiff's Complaint and each cause of action therein, is barred by the applicable statute of limitations.

3.     Whether Plaintiff's claims are barred by equitable doctrines, including but not limited to laches, unclean hands, collateral estoppel, judicial estoppel and/or res judicata.

4.     Whether Plaintiff has failed to file a sufficient California Tort Claims Act Claim for the pendent state causes of action, and thus each pendent cause of action therein, is barred.

5.     Whether the conduct, acts and/or failures to act of itself, its agents and/or its employees were privileged.

6.     Whether County Defendants are immune from liability for the causes of action alleged in the Complaint pursuant to California Government Code sections 815, 815.2, 815.3, 818, 818.2, 818.4, 818.8, 820(b), 820.2, 820.4, 820.6, 820.8, 821, 822.2 and 823 of the Government Code and sections 834, 834a, 835, 835a and 836 of the Penal Code.

7.     Whether County Defendants are immune from any civil liability in this matter under the doctrine of qualified immunity in that, at all times, they and/or their agents and employees had a good faith belief that each and every action employed and taken with regard to the acts complained of by Plaintiff was objectively reasonable and thus justified, reasonable and lawful, or reasonably believed

to be justified, reasonable and lawful, under the circumstances presented to these County Defendants and/or their agents and/or employees at the time of the incident[s] at issue herein.

8.      Whether the damages, if any, of which Plaintiff complains were the proximate results of the negligence, carelessness and/or recklessness of Plaintiff herself, both in her acts and/or failures to act, so as to bar or diminish recovery herein as against these County Defendants.

9.      Whether the damages, if any, of which Plaintiffs complain, were the proximate result of the intentional acts of Plaintiff, and each of them, done with the knowledge of the act and consequences, all so as to bar or diminish recovery herein as against this Answering Defendant.

10.      Whether the damages, if any, of which Plaintiff complains were the proximate results of the negligence, carelessness and/or recklessness of persons other than these County Defendants, so as to bar or diminish recovery herein as against these County Defendants.

11.      Whether Plaintiff, with full knowledge of the dangers incident thereto, intentionally and voluntarily exposed herself to all those matters and things alleged in the Complaint and did thereby knowingly and voluntarily assume the risk naturally incident thereto.

12.      Whether Plaintiff, by the exercise of reasonable efforts and/or care, could have mitigated the amount of damage alleged to have been suffered by Plaintiff, and that at all relevant times Plaintiff failed, neglected, and refused, and continue to fail, neglect and refuse, to exercise reasonable efforts and/or care to mitigate Plaintiff's alleged damages.

13.      Whether the incident, and each and every portion thereof, was the result of an Act of God, and/or the result of causes unrelated to these County Defendants and/or beyond its control, and were not the result of these Answering Defendants' acts and/or failures to act, and/or any policies and/or procedures of these County Defendants, and thus bars recovery.

14.      Whether County Defendants' agents and/or employees did not act, intentionally or otherwise, with malice, fraud or oppression, and are thus exempted  from punitive and/or exemplary damages.

15.      Whether County Defendants are immune from punitive and/or exemplary damages in accordance with the California Statutes, including but not limited to California Government Code § 818, Code of Civil Procedure § 377.61 and Civil Code §3294, and that these County Defendants are further immune and jurisdiction is lacking over claims for punitive or exemplary damages against these County Defendants pursuant to the Constitutions of the United States and the State of California.

16.     Whether Plaintiff's Complaint is frivolous, and constitutes an action and tactic not based in good faith, and will cause unnecessary cost, delay and obstruction to these Answering, wherefore these County Defendants are entitled to costs and expenses for all pendent state causes of action as provided in Code of Civil Procedure § 128.5(a) and/or for violation of Federal Rules of Civil Procedure, Rule 11.

17.     Whether the actions as alleged in the Complaint, taken by a person or persons other than these County Defendants, may have exceeded the course and scope of the person(s) duties, and therefore the acts or failures to act of these County Defendants, acting within the course and scope of their duties, are privileged and these County Defendants are entitled to full, partial and qualified immunity.

18.     Whether, in the event of a finding of liability, County Defendants assert the protections of Civil Code sections 1431.2, et seq., and, accordingly, these County Defendants can only be obligated to pay that percentage of non-economic damages which corresponds to these County Defendants percentage of fault, if any such fault is found.

19.     Whether, in the event of a finding of liability, these County Defendants assert the benefits of Government Code §985 et seq. and request the Court make a determination of collateral source payments to, or on behalf of Plaintiff.

20.     Whether County Defendants are entitled to the protection and benefits of Government Code section 985 et seq.

21.     Whether Plaintiff should take nothing by this action.

22.     Whether County Defendants should be awarded their costs of suit incurred herein.

23.     Whether County Defendants should be awarded reasonable attorneys' fees pursuant to Federal Rules of Civil Procedure, Rule 11, and 42 U.S.C. § 1988 and relevant California statutes.

City Defendants' Defenses:

1.     Whether Plaintiff fails to state facts sufficient to constitute a cause of action against the City Defendants.

2.     Whether Plaintiff realized and appreciated the alleged danger which presented itself at the time of the happening of the event set forth in the Complaint herein; that Plaintiff voluntarily placed herself in a position of peril, and that the loss or damage, if any, sustained by Plaintiff was caused by said risks which were accepted and voluntarily assumed by Plaintiff when engaging in said activity.

3.      Whether Plaintiff had full knowledge of the risks involved in the activity in which she was engaged at the time of the incident set forth in the complaint herein; that Plaintiff voluntarily assumed all the risks incident to the activity engaged in at the time and place mentioned in said Complaint; and that the loss or damage, if any, sustained by her was caused by said risks that were accepted and voluntarily assumed by her.

4.      Whether the Complaint and each and every cause of action therein is barred by the statute of limitations as set forth in California Code of Civil Procedure § 335 *et seq.* and related statutes.

5.      Whether the Complaint and each and every cause of action therein is barred because Plaintiff failed to use reasonable diligence to mitigate damages allegedly sustained by her and said failure bars or reduces the recovery, if any, from City Defendants.

6.      Whether any act or omission on the part of the answering City Defendants, their agents or employees, was not the proximate cause of Plaintiff's injury.

7.      Whether Plaintiff has been damaged in any sum or sums, or otherwise, or at all, by reason of any act or omission of City Defendants.

8.      Whether the provisions of California Tort Claims Act of the California Government Code (Government Code § 810 *et seq*.) as a measure of the duty of the City of Bakersfield and its employees.

9.      Whether City Defendants are entitled to the immunities under the applicable provisions of the Government Code including, without limitation, §§ 820.8, 830-835.4.

10.     Whether to the extent the Complaint includes allegations within the scope of the California Tort Claims Act, the Complaint is barred by the following provisions of the California Tort Claims Act: Government Code §§: 815; 815(b); 815.2(b); 815.4; 818.2; 818.4; 818.6; 818.7; 818.8; 820; 820(b); 820.2; 820.8; 821.2; 821.4; 821.6; 821.8; 822; 822.2; 830.2; 830.4; 830.6; 830.8; 830.9; 831; 831.2; 831.4; 835.4; 840; 840.6; 844.6; 845; 845.2; 845.4; 845.8; 850; 850.2; 850.4; 854.8; 855; 855.2; 855.4; 855.6; 855.8; 856; 856.2; 956.4.

11.     Whether to the extent the Complaint includes allegations within the scope of the California Tort Claims Act, Plaintiff's purported causes of action are limited to those factual allegations and theories of recovery set forth in Plaintiff's written government tort claim, if any, and that to the extent the Complaint attempts to enlarge or expand upon those allegations and theories, the Complaint

fails to state a cause of action and is barred pursuant to Government Code §§ 905, 910, 911.2, 945.5, 950.2 and related provisions.

12.     Whether the employees, officials and agents of City Defendants were at all times material hereto acting with both subjective and objective good faith, such that any claim for relief that Plaintiff may have is barred by law.

13.     Whether by reason of Plaintiff's own acts and omissions, Plaintiff is estopped from seeking any recovery from City Defendants by reason of the allegations set forth in the Complaint.

14.     Whether Plaintiff's maintenance of this action is frivolous, vexatious and unreasonable, thereby entitling the City Defendants to sanctions and appropriate remedies (including, without limitation, attorney's fees) against Plaintiff.

15.     Whether the Complaint and each cause of action therein are barred by the doctrine of unclean hands.

16.     Whether to the extent Plaintiff's failure to file a claim bars this action, the Complaint and each cause of action there in is barred by the doctrine of *res judicata* and collateral estoppel.

17.     Whether at all times and places mentioned in the Complaint, City Defendants acted without malice and with a good faith belief in the propriety of their conduct.

18.     Whether at all times mentioned in the Complaint, City Defendants performed and discharged in good faith each and every obligation, if any, owed to Plaintiff.

19.     Whether the City Defendants' conduct at all times material herein was privileged and/or justified under applicable state and federal law.

20.     Whether the City Defendants are entitled to the various immunities conferred upon them pursuant to the California Government Code, and other applicable provisions of law including, but not limited to, those contained in Division 3.6 of Title 1 of the California Government Code.

21.     Whether the provisions of the Public Liability Act of the California Government Code as the sole and exclusive measure of City Defendants' duties and liabilities in this action.

22.     Whether the City of Bakersfield, a public entity, is immune from liability for exemplary damages herein pursuant to § 818 of the California Government Code.

23.     Whether at all times mentioned in Plaintiff's Complaint herein, Plaintiff acted in a careless, reckless, wanton and negligent manner in and about the matters set forth in the Complaint; that

such careless, reckless, wanton and negligent conduct proximately contributed to the injuries and damages, if any, sustained or claimed by Plaintiff; that as a consequence, Plaintiff's claim is barred.

24.     Whether the act or omissions which Plaintiff claims give rise to liability in this case were within the discretion of a City of Bakersfield employee acting within the course and scope of his or her employment and, as a result, Plaintiff's claim is barred by the discretionary act immunity contained in Government Code § 820.2 and its related provisions.

25.     Whether any force was used by City Defendants against the Plaintiff herein, said use of force was the lawful exercise of the right of self-defense and defense of the public and privileged by law, and any recovery pursuant to said use of force is barred.

26.     Whether the Complaint and each and every cause of action therein is barred because the use of force against the Plaintiff by the employees of the City of Bakersfield, if any, was privileged and justified.

27.     Whether by way of a plea of comparative negligence that Plaintiff was negligent in and about the matters and activities alleged in the Complaint; that Plaintiff's negligence contributed to and was a proximate cause of Plaintiff's alleged injuries and damages, if any, or was the sole cause thereof; and that if Plaintiff is entitled to recover damages against the City Defendants by virtue of the Complaint, the City Defendants pray that recovery be diminished or extinguished by reason of the negligence of the Plaintiff in proportion to the degree of fault attributable to the Plaintiff.

28.     Whether if any force was used to effect the arrest of the Plaintiff herein by the City Defendants, such force was authorized and privileged pursuant to §§ 835 and 835a of the California Penal Code and as a proximate result thereof Plaintiff is barred from any recovery herein for any alleged injury or damage if any there were.

29.     Whether Plaintiff was under a duty pursuant to § 834a of the California Penal Code to refrain from using force or a weapon to resist his arrest; that Plaintiff breached her duty even though she knew or by the exercise of reasonable care should have known that she was being arrested by a peace officer; that as a direct and proximate result of Plaintiff's breach of this duty she is barred from recovery for any loss or damage she may have incurred, if any there be.

30.     Whether at all times mentioned in Plaintiff's Complaint herein, Plaintiff willfully, wantonly, maliciously, and unlawfully committed a violent assault on the persons of the arresting officers and bystanders; that it became and was necessary to use force on the person of the Plaintiff to defend said arresting officers and bystanders from said violent assault on their persons; that the injuries,

if any, and damages, if any, incurred by Plaintiff were proximately caused by the necessary use of said reasonable force on the person of Plaintiff and not otherwise; and that by reason of Plaintiff instituting said vicious and violent assault on the persons of said arresting officers and bystanders, Plaintiff's failure and refusal to desist from continuing said assault, and the consequent necessity to use reasonable force to defend said arresting officers and bystanders from said assault, Plaintiff's claim, if any, is barred by law.

31.     Whether no more force was used on Plaintiff's person than was necessary to effect detention, overcome any resistance thereto, prevent escape there from, and prevent injury to the officers and the public and to facilitate and safeguard a valid police investigation.

32.     Whether City Defendants are immune from any civil liability in this matter under the doctrine of qualified immunity in that it had a good faith belief that each and every action employed and taken with regard to the acts complained of by Plaintiff herein, were justified, reasonable and lawful under the circumstances presented to the City Defendants at the time of the incident at issue herein.

33.     Whether pursuant to Government Code § 845.8, City Defendants are immune from liability as a matter of law for injury caused to Plaintiff by a person resisting arrest.

34.     Whether the Plaintiff has failed to allege facts in the Complaint sufficient to state a claim for relief under 42 U.S.C. § 1983 against the City Defendants, their agents, employees and particularly police officers.

35.     Whether Plaintiff has failed to allege sufficient, specific facts against the City of Bakersfield, a public entity, to state a claim for relief under 42 U.S.C. §§ 1983 or 1985.

36.     Whether Plaintiff had full knowledge of the risks involved in the mutual combat activity in which she engaged and set forth in the Complaint herein; that Plaintiff voluntarily assumed all the risks incident to the activity engaged in at the time and place mentioned in said Complaint, and that the loss or damage, if any, sustained by Plaintiff was caused by said risks, which were accepted and voluntarily assumed by the Plaintiff when she engaged in said activity.

37.     Whether by way of a plea of self defense that City Defendants honestly and reasonably believed that Plaintiff was about to inflict harm upon them and City Defendants' use of force, if any, was done reasonably and in self defense.

38.     Whether City Defendants are not liable for any cause of action based in negligence, as it has breached no duty of care owed to Plaintiff.

38.     Whether the damages alleged therein, if any there were, are, and/or shall be, the sole and proximate responsibility and liability of persons and/or entities other than these answering City Defendants, and are neither the liability nor responsibility of City Defendants.

39.     Whether in the event they are found liable to the Plaintiff, City Defendants are responsible for the Plaintiff's damages according to City Defendants' percentage of fault, pursuant to Civil Code section 1431.2.

40.     Whether City Defendants are immune from liability for the causes of action alleged in the Complaint, if any, pursuant to California Government Code sections, including but not limited to, 815, 815.2, 815.4, 818, 820(b), 820.2, 820.4, 820.6, 820.8, 821, 821.6 and 821.8 of the Government Code and sections 834, 834a, 835, 835a and 836 of the Penal Code.

41.     Whether the damages, if any, of which Plaintiff complains, were the proximate result of the intentional acts of Plaintiff, so as to bar or diminish recovery herein as against these City Defendants.

42.     Whether Plaintiff consented to all of the acts herein.

43.     Whether probable cause existed for each of the acts undertaken by City Defendants herein.

44.     Whether the allegations contained in Plaintiff's Complaint are baseless and warrantless and the bringing of the Complaint and the making of the allegations and charges therein are outrageous and malicious conduct and are intended to specifically injure City Defendants, and City Defendants specifically reserves the right to file suit for malicious prosecution and abuse of process, among other causes of action, pursuant to California State Law and the California Peace Officer's Bill of Rights.

45.     Whether Plaintiff should take nothing by this action.

46.     Whether the City Defendants should be awarded their costs of suit incurred herein.

47.     Whether the City Defendants should be awarded reasonable attorneys fees pursuant to Federal Rules of Civil Procedure, Rule 11 and 42 U.S.C. §1988.

**5.      STATUS OF ALL MATTERS BEFORE THE COURT:**

There are currently no matters pending before the court relative to the above-referenced action.

**6.      COMPLETE AND DETAILED DISCOVERY PLAN:**

**A.      An Outline of the Subject on Which Discovery May Be Needed:**

<u>Plaintiff</u>

Plaintiff intends to conduct comprehensive discovery on all issues and facts related to all Defendants, depositions, and retention of expert witnesses to prove its case.  Plaintiff anticipates at least ten depositions in this case and Defendants refuse to stipulate to taking more than ten depositions therefore Plaintiff requests an order enlarging the number of depositions to be taken to 20.

<u>County Defendants</u>

County intends to conduct discovery on all facts and issues related to: the actions and/or inactions of County Defendants, Youngblood and/other County personnel; evidence of plaintiff's veracity; and, Plaintiff's alleged damages including her post and pre-incident mental and physical condition.

<u>City Defendants</u>

From the City Defendants' perspective, discovery will need to be conducted on issues concerning the facts that allegedly gave rise to the lawsuit, including, but not limited to, testimony from all percipient witnesses.  Discovery will also be needed on the nature and extent of any injuries and damages.  These issues will also require the retention and deposition of expert witnesses.

**B.      Whether Discovery Should be Conducted in Phases or Limited to or Focused Upon Particular Subjects:**

The parties are not proposing any of these limitations.

**C.      Proposed Discovery Plan:**

| | |
|---|---|
| Rule 26 Initial Disclosures: | 04/03/2018 |
| Mid-Discovery Status Report: | 10/04/2018 |
| Mid-Discovery Status Conference: | 10/15/2018 |
| Non-Expert Discovery Cutoff: | 01/22/2019 |
| Expert Disclosure Date: | 02/01/2019 |
| Rebuttal Expert Disclosure Date: | 03/04/2019 |
| Expert Discovery Cutoff: | 03/18/2019 |

**D.     Pre-Trial Motions:**

Non-Dispositive Motions:

Filed no later than:                                    04/02/2019

Heard no later than:                                   05/02/2019

Dispositive Motions:

Filed no later than:                                    05/13/2019

Heard no later than:                                   06/21/2019

- If Defendants file two motions for summary judgment, Plaintiff requests three weeks to file its opposition.

**E.     Pre-Trial Dates and Trial Date:**

Mandatory Settlement Conference:              07/11/2019

Pre-Trial Conference:                               08/12/2019

Trial:                                                     09/09/2019

**F.     Protective Order**

<u>Plaintiff</u>

Plaintiff does not foresee any need for a protective order but will stipulate to one as necessary.

<u>County Defendants</u>

As a result of the nature of County's intended discovery, a revised 9th Circuit Court of Appeals proposed Protective Order will likely be necessary.

<u>City Defendants</u>

From the City Defendants' perspective, a protective order may be necessary at this time; it will depend on the nature of the discovery requests propounded by Plaintiff.

**G.     Scheduling of Discovery**

The parties are not proposing any limitations and believe that traditional discovery under the federal rules is acceptable.

**H.      Depositions**

The parties do not foresee the need to take discovery outside of the United States.   The parties anticipate video and/or sound recording of depositions.

**9.      SETTLEMENT:**

The parties do not believe that settlement is possible at this time, absent some initial discovery.

**10.      JURY OR NON-JURY CASE:**

All parties request a jury trial.

**11.      AN ESTIMATE OF THE NUMBER OF TRIAL DATES REQUIRED:**

At this time, the parties anticipate this case will take approximately five (5) – seven (7) days for a jury trial.

**12.      CONSENT TO MAGISTRATE JUDGE:**

<u>Plaintiff</u>:

Plaintiff will notify the court within ten (10) days of the scheduling conference order by filing a consent/decline form.

<u>County Defendants</u>:

County is agreeable to the jurisdiction of the Magistrate Judge for all purposes related to this matter.

<u>City Defendants</u>:

City Defendants have consented to the jurisdiction of the Honorable Jennifer L. Thurston for all purposes.

**13.      BIFURCATION OF TRIAL:**

<u>Plaintiff</u>:

Plaintiff disagrees on whether there is any need to bifurcate this trial.

<u>County Defendants</u>:

County is of the opinion that trial of this matter should be trifurcated as follows: 1) liability; 2) damages; and 3) punitive damages if necessary.

<u>City Defendants</u>:

City Defendants will reserve comment on issues pending discovery.

**14.     RELATED MATTERS:**

The parties are presently unaware of any pending related matters.

Dated:  March 7, 2018.                    WALK FREE LAW

                                          */s/ Alana Yakovlev*
                                          By:_____
                                             Alana Yakovlev,
                                             Attorneys for Plaintiff


Dated:  March 7, 2018.                    OFFICE COUNTY COUNSEL, COUNTY OF KERN

                                          */s/ Andrew C. Thomson*
                                          By:_____
                                             Andrew C. Thomson,
                                             Attorneys for County Defendants above-named.


Dated:  March 7, 2018.                    MARDEROSIAN & COHEN

                                          */s/ Michael G. Marderosian*
                                          By:_____
                                             Michael G. Marderosian,
                                             Attorneys for City Defendants above-named.